Good morning, Council. Good morning. Adam Siegel on behalf of the Laborers' Pension Trust. I'd like to reserve two minutes for rebuttal, please. MEPA has a limited exception to withdrawal liability when substantially all of an employer's employees for whom it contributes to a pension plan perform work in the building and construction industry, but as an exception to a remedial statute, it needs to be applied narrowly. The existing definition of construction industry that applies is provision of labor whereby materials and constituent parts are combined on a building site to form, make, or build a structure. Walker does not do that. In this case, Walker's arguing for a huge expansion to that definition, clear definition, to escape its fair share of unfunded liability. The definition was first derived by the NLRB in the 1966 Indio Paint case and applied through the federal courts to MEPA in Union Asphalts v. Mocan in 1988. Now, the enactment of the law was 1980, so between those two. Importantly, going back to Indio Paint, the NLRB did consider whether to include maintenance and repair in that definition and walks through those parts of the broader construction-related industry and then did not include them in the definition that it settled on. It also did not include alteration in the definition it settled on. Indio Paint instead focused its definition on uniting materials by gradual means into a composite whole, combining materials, putting parts together to form an integrated object. Those are the concepts that made it into the final definition. The pension plan trustees in this case looked at what, as a matter of fact, Walker's workers did and to determine they did not make, form, or build anything. Therefore, the exception did not apply. Can I ask you, just sort of backing up a step, so we have a statute enacted in 1980, right? And it uses this term that, I don't know if it appears anywhere else in the U.S. Code, but it appears in the Taft-Hartley Act, right? And so, do you agree that we should read this 1980 statute as having adopted the administrative interpretation of the term building and construction industry that existed at the time and that the NLRB had developed for that term in the Taft-Hartley Act? I agree that the committee notes in the legislative history indicate that the definition should be the same as used in the Taft-Hartley Act, but the only thing they could have had in mind at that time was the definition at that time. It was in DOP. That is not sufficient to bring with it into our federal case law to our federal courts. Everything that came after as the NLRB, as if we get time, I'll get to, bounces around between what is construction and what is not. That's an unworkable framework in which to administer MEPA as to pension plans and withdrawal liability. We need a firm, clear definition we can count on. MoCAN brings that to us. It uses the IndioPaint language, but from there, it's up to federal courts, federal case law, and MEPA cases to tell us how we apply that rule. That's fair enough, but I guess my question is, I mean, from the way you're using IndioPaint, IndioPaint is not itself the statute. I'm sorry, what? IndioPaint is not itself the statute, and in particular, the build, make, or build, form, make, structure. It's not really, why should we be parsing that particular phrase from IndioPaint as if that were the text that Congress enacted, as opposed to looking at what was the practice of the NLRB under Taft-Hartley as of 1980, which is maybe somewhat broader than just that phrase in IndioPaint. Do you see the? Yes, because federal courts used that and adopted it to interpret that phrase in the MEPA cases. That's why, because the federal courts decided what that definition should be. They did look to Indio and use that phrase, but from there, it's really a matter of the federal courts to come in and say, we're going to do a wholesale expansion of this. It doesn't just mean building, forming, and combining. It means anybody who's on a job site. It means cleaning. It means all these other things that wholly undermine MEPA, hurt pension plans, and defeat the purpose of the very limited exception, expanding it well beyond what Congress had ever intended. But even before 1980, and again, I think you have a, there's a lot of force to the idea that we should be looking at only what had existed in 1980. Even before 1980, there was Zedell, which was dismantling a structure, so, and the NLRB thought that that was within the exception. So, that seems to undercut the idea that we should just be looking at the particular words build, form, or make. What's your answer to that? Yeah, so that's 1969, but it's important to look at what Zedell actually did. Yes, it dismantled military sites and dismantled missiles and used the scrap to build factories and warehouses. That decision doesn't really tell us on what it turns, whether it turns on just the applies to several of these cases. You know, a Cajun company, yeah, it talks about maintenance and repair, but that company installed cabinets, installed floors, installed ceiling tiles, poured asbestos. The NLRB decision doesn't tell us what are these key tasks, which ones are triggering the construction finding. That's one of the reasons we shouldn't be getting ourselves caught up in all these changing NLRB decisions. You're going to have a situation where in year X, an employer under the current NLRB decisions doesn't qualify for the constructional and has to pay withdrawal liability. A year later, another decision comes down, perhaps different board members. The goal line has moved, and now an employer does have to pay withdrawal liabilities. I mean, doesn't have to pay because the construction is there. Do you think a roofing contractor is in the building and construction industry? I'm sorry. A roofing contractor, somebody who puts roofs on houses. Yes. Is that somebody in the building and construction industry? Yeah, that's building construction. That's the actual additive act of combining materials to form a structure. What if most of what they do is, you know, replace existing roofs? If it is a structural additive task in adding to the building and the structure for a permanent basis, that's likely building and construction. We don't have that case before us, but that does... But even though, I mean, like you had a roof, it was just leaky. Yeah. Now they've taken it off and just... We don't argue nor hang our hat on existing versus new structures. We hang our hat on the words of this definition. But I guess where I'm going is it seems like in sort of ordinary understanding what they're doing is not adding anything to the structure, they're just modifying or altering the structure. And it seems like that ought to be included. So...  Okay. But then why isn't the asbestos abatement person, you know, they're modifying what's in the structure or altering the structure? They're not adding something, building something new, but they're modifying what's there. All right. Substantially, all of the asbestos abatement work is scraping, encapsulating, and removing the asbestos substance. There are other tasks involved, but they are not substantially all of what those workers did. To answer your question more anecdotally, I do have plans that struggle with remodel. If there is an impact or alteration of a load-bearing wall, those plans tend to treat that as construction. If it is cosmetic, merely fixtures and improvements, they have to draw that line. But we always are looking at the MOCAN definition when we're looking at the facts of a given employer. Now, the arbitrator issued a very short decision at Walker's request for an expedited decision, but nevertheless did say, as a matter of fact, Walker's work did not meet that definition. And under 1401C, that's entitled to deference. Whether or not a withdrawal has occurred is a mixed question of law and fact that should take with it and receive deference as well. Even if you unpack the mixed question, whether or not Walker was forming, making, or building a structure as required by that definition is still a factual component entitled to deference. The lower court did not apply any deference at all to any of that. And when the deference is put in the statute by Congress under 1401, as you see in the Slits v. Milwaukee case, it really should be given a very high standard of review and only disturbed for clear error. Of course, the lower court didn't do that. Instead of wading into this morass of NLRB decisions, we should look only to the cases rising under MEPA. We have Mocant, and then more recently, we have DICOM. And DICOM is a very telling decision because the employer in DICOM engaged with the building in a much more additive and permanent way, installing wires, installing equipment, drilling holes to run the wires through the building. More engagement with that actual structure than Walker even comes close to, yet DICOM's work was not construction industry work. DICOM had to play withdrawal liability. If the work in DICOM doesn't qualify for the exception, there's no way the work that Walker was doing could qualify. That's totally inconsistent. It's only by digging around in these various NLRB decisions and ignoring the part of the work the employers do that might arguably be construction that Walker reaches the point where it tells this court, merely maintenance and demolition and hauling away qualifies, primarily because it's at the job site. But that's not the test. And we shouldn't expand that definition by using all this underlying and ever-changing NLRB authority. We certainly know from the recent Supreme Court case in Loper that it's not a time to increase reliance on administrative decisions. Instead, the federal courts using those federal cases should be making these decisions. I will acknowledge that the three MEPA asbestos cases, no one raised the argument about whether asbestos abatement was or was not construction work. For the case involving the asbestos workers pension plan, we believe that that is a notable absence. Surely the asbestos workers pension plan and all the employers engaged in that work, if the construction rule applied, somebody would have said something. Unfortunately, we don't have any direct ruling taking that up. Um, the closest thing is an NLRB decision, um, that, uh... One moment... Well, I'll move on. So we shouldn't be expanding the reliance on those administrative decisions even further at this point. One thing that I do want to address because it's in the lower decision is Operating Engineers v. Beck. This is the case where surveying was considered construction work. And this case involves a collection case. It's not a MEPA-related case. And the trust fund in that case did not raise the issue of whether or not that was construction work. That's an outlier. It's in a different area of law. The issue was never raised. And there's no other authority since that time that would indicate that type of work is construction work. Lastly, I want to touch briefly on Walker's argument that because it arguably has an 8F pre-hire agreement reserved for the construction industry, that somehow it must be a construction company or the project labor agreements are somehow void. Number one, under this court's decision in McKillop v. Lowes, 58F, 3rd, 1441, defenses to the majority status on an underlying CBA are not assertable against trust funds. That's a collection case. It was extended to withdrawal liability by N. Gary, 153 F, 3rd, 2017. Whether the union has or has not achieved majority status, it's not a defense to a risk of trust funds. Also, the project labor agreement in this case in the record incorporates by reference the master labor agreement operated by the laborers. Section 2A of the master labor agreement in the record at 2ER33 provides that the employer is satisfied and acknowledges the union's majority status and acknowledge that the union offered to demonstrate it. In other words, there's a safe harbor in there establishing 9A status either way. Thank you. All right, counsel. You've almost used all your time. We'll give you one minute for rebuttal. Thank you. All right, good morning, your honors. Ryan Curtis on behalf of Walker Specialty Construction. May it please the court. Walker Construction asked this court to affirm the district court's well-reasoned opinion that Walker Construction has no withdrawal liability because it qualifies for the building and construction industry exception. The issue here is the proper interpretation of the definition of building and construction industry for purposes of withdrawal liability from this Taft-Hartley multi-employer pension trust fund. There are no disputes of fact in this case. The trust here argues that the building and construction industry exception applies narrowly to work assembling new structures. It excludes Walker Construction's demolition and asbestos abatement work that alters, repairs, or improves existing structures and building sites. The trust position is plainly contrary to all authorities on this point. It is contrary to federal case law, is contrary to congressional intent, it is contrary to federal agency interpretations, including that from the National Labor Relations Board, excuse me, National Labor Relations Board and the Pension Benefit Guarantee Corporation, and is contrary to the very policy reasons for this exception. Counsel, what deference, if any, should we give to the arbitration decision? An arbitrator's decision under the rules for ERISA and these types of cases, they're entitled to deference for factual determinations, but their decisions on an issue of law are exclusively to be reviewed de novo. Well, so it's your position that whether or not something constitutes construction work is a legal determination? It's a legal determination based on the definition and how it should be applied. There were no factual disputes in this case as noted by the other parties in their motions for summary judgment. Throughout arbitration, throughout the lower court, there haven't been factual disputes raised. Walker Specialty Construction has talked about this is the type of work we do for demolition, for asbestos. Here are the contracts we do. Here's the nature of the work and what we do. That was never disputed. The only thing disputed is how the definition of the building and construction industry should be interpreted. So again, to your point, an arbitrator's decision would only be entitled to deference for factual findings, but there are no factual disputes in this. So there's no mixed issue of fact and law because we only have questions of law here. You can't mix anything if you only have one ingredient. The only issue here is a legal interpretation. Well, isn't a mixed question of fact and law when you apply the law to the facts? Isn't that a mixed question of fact and law? Well, I think, Your Honor, the sole issue here is what is the definition? To answer that question, what is the application of the law to the developed facts, a mixed question of fact and law? No, Your Honor, I don't believe that is. And there is case law on that. And so what cases will be- So what case can you cite me to for the proposition that the application of the law to the facts is a question of law rather than a mixed question of law and fact? On particular point in a withdrawal liability case regarding this issue in Concrete Pipe. So you're citing Concrete Pipe for that proposition? Yes. 508 U.S. 602. Well, I want your best case. So Concrete Pipe is your best case for the proposition that application of law to the facts is a pure question of law. Concrete Pipe says that in your reading of it. My understanding, yes, is that that case looks at once if there are no disputes of fact, then there's not a mixture of a question of law and fact. Or if the factual disputes have been resolved, then we turn to how exactly, how are these facts applied under the law? But that becomes a question of law, what the definition is and how should it be interpreted. Isn't it pretty standard that statutory interpretation, us interpreting the MEPA exception for determining whether or not, what the building and construction industry means, that statutory interpretation is, in fact, a legal question that we reviewed de novo? Yes, that's our point. There is no application of any facts to the statutory interpretation task that we have at hand first, which is to define what this clause means, correct? Right. So it's purely an issue of, here's the definition that's been accepted. How shall that be interpreted? And so that's where I would turn to. But before we leave that, why were all the facts put in then about what the work is that is done by Walker Specialty? If the facts have no bearing on our decision, why was all of that information included before the arbitrator and before the district court? Because we are focused on a sole element of the exception. And that is whether substantially all of the employees for which the employer contributed to the fund were engaged in the building and construction industry. So there's three elements. One is, is the plan primarily servicing employees in that industry? And they agree that it is. The second is that, did we have a withdrawal? Did we leave and stop contributing? Yes, we did. So the third and only is, are these employees substantially involved in the building and construction industry? So no dispute about the work they did. We had to meet that burden. We demonstrated that for 10 years, this is the work that they've done. So no dispute that they were doing demolition work. No dispute that they were doing asbestos abatement. It's purely a question of law though, now of how do we interpret that definition? I don't understand why you would need the facts then. If we're just looking at the wording and determining what the wording means, why would the facts come in at all? I don't know what else to say. Other than I think that's how we got here is that we're looking at how we apply those to the facts. So the facts are in there, but I mean the dispute is about the interpretation of the definition. And so I know I'm maybe not answering your question. Well, I'm just curious if you say the facts don't matter, why are they there? Well, the facts matter, there's just no dispute about them. And so that's where we don't have a mixed issue of question of fact and law because the only question that we have here is how to interpret that definition. So when we write an opinion in this case, there's probably going to be a sentence that says, you know, work is performed in the building and construction industry if it... How would you like us to write the second half of that sentence? Sure, well, that's a great opportunity to answer that question. So I go back to that the statute doesn't define building and construction industry. And Congress didn't make a cross-reference, it didn't do anything. Well, maybe you can get to the explanation of it, but just what is the definition you want us to adopt? The definition that comes from MOCAN is simply that it's subsuming the provision of labor whereby materials and constituent parts have been combined on the building site to form, make, or build a structure. What MOCAN and other cases have also said is that it includes work that alters, repairs, or improves. So it's structural changes. If I were to sit down... But I'm still... So like, so we would write build, form, or make a structure, but it also includes... Which includes alter, repair, or improve a building site. Okay. Or structure. I mean, these are structural changes. I think I can get... They've talked about how this should be narrowly construed, and we agree. So some of the things that have been excluded in case law are people who only drive trucks and deliver materials. The Pension Trust talks about how they exclude people who are flaggers, pilot car operators. They talk about furniture movers, even office workers. Clearly, none of them are affecting the structure of the building. They're not improving it. They're not doing repairs. They're not doing any structural changes. And so in our situation, asbestos and demolition work clearly is altering the structure or building site. So there could be a building that needs to be knocked down. There could be a kitchen that needs to be removed. That is clearly altering the structure of the building. And it is also so other work can happen. So how is asbestos removal altering the structure? Well, it is because it involves things like removing asbestos roof tiles or flooring. So they're pretty drastic changes. The opposing side talks about, oh, well, you're just scraping popcorn ceilings. That's not even in our descriptions. But we do very significant structural changes. So your friend on the other side argues that we shouldn't adopt the definition that's been set forth by the NLRB. Instead, we should adopt the definition used by the other circuits. But don't these other circuits, at least the way I'm reading these cases, DICOM, MOCAN, don't they adopt the NLRB definition? They do. In each case that we're talking about, those cases look at the statute and say it's not defined. What do we do? And they refer to the congressional record that says that it should be treated the same way as it's handled in the administration of Taft-Hartley. And when you do that, you go to particular NLRB cases and see how they've interpreted. And it's because, and it makes sense that Congress would recommend this, because Taft-Hartley is the law that makes these types of plans available. It is an unfair labor practice for an employer to give something in a benefit to a labor organization. And so the exception is these Taft-Hartley multi-employer plans. So, but what do we do with Loper-Bright that now tells us that we don't defer to agency decisions that we engage in our own statutory construction? So what does that do to your reliance on the NLRB decisions? Well, we think it's always been in the purview of this court to make these determinations. What these courts do is look to what has happened in NLRB decisions. And you still do that. The NLRB is not a party to this case. They haven't made a decision. They haven't made an interpretation on this particular case. But you all are relying on past interpretations and Loper-Bright tells us now that we don't defer to that, that we look at statutes independently without deference to agency decisions. So if without deference to the NLRB decision, how should we go about interpreting this phrase? Well, I note that even in the Loper-Bright case, it said, well, we're not giving them the control, but they still are experts in this area and a court can still consider that. So we think a court should still consider that. We can consider it, but what if we decide that the NLRB decision is not correct, then from the statutory history and everything, because there's one committee report that all of this hinges on, correct? That's the beginning of it, but federal courts, all the cases that they have cited as they get to this analysis, they refer to that. So that's the beginning. It came from the congressional record, but now it's very much in federal case law that what courts do. In the Mocan case itself said, what we are to do and what other courts do is look at how this definition has been applied under 8F of Pat Harley. And are you asking us to look at how the definition was applied by the labor board before 1980? Or are you also asking us to look at post-1980 NLRB decisions? There's nothing in case law that said that you would have to look post-1980. The key case- Well, I'm just asking, what is your view? Are the post-1980 cases relevant? Yes. So the main case we look at for asbestos abatement is U.S. abatement. So then, before we get into what that case says, why? I mean, I understand the argument that when Congress adopted this term, it borrowed, there was a preexisting interpretation of that term and it borrowed that term when it adopted it. That makes sense. It seems like quite another thing to say that Congress wanted this term to evolve in the future based on what an agency interpreting a different statute was saying. I mean, quite apart from the Loeber-Bright concerns that Judge Rawlinson mentioned, it just seems a very curious arrangement that they're just sort of setting the statute off on this journey. So why should we read it that way? I think it's especially telling here because it is about asbestos abatement. Withdrawal liability was created in 1980. Asbestos abatement was a brand new industry. In the 1970s, people were still installing asbestos. And so some of those cases came later as asbestos abatement grew as an industry. And so it wasn't until 1991 that someone said, can I have a pre-hire agreement for asbestos abatement? Is that in the building and construction industry? And in U.S. abatement, the NLRB said yes. So I would say court cases that do come after 1980 can be considered. But I don't understand why the conclusion follows, right? Because the NLRB said that under a different statute, right? So what is there in our statute that says, our statute is not enforced by the NLRB, is it? Correct. It is not. Okay, so what is there in the statute that tells us that Congress wanted its meaning to evolve based on what the board did with a different statute? Because it just says it should be treated as it is in the administration of Taft-Hartley. Well, the statute doesn't say that, does it? The committee report said that.  Okay. So let me get back to one line that's from Loper Bright. But it says, from here on, so a decision from an agency cannot bind a court, but it may be especially informative to the extent it rests on factual premises within the agency's expertise. Such expertise has always been one of the factors which may give an executive branch interpretation particular power to persuade, if not, if lacking power to control. I did also want to say, I talked about how they want it to be narrowly construed. Asbestos abatement and demolition is not akin to office movers, flaggers, and other things that clearly are not affecting the structure. They're not make forming or building a structure. They're not altering, repairing, or improving a structure. But this is also not subject to political whim. The Indio Paint case goes back to 1966. That's 11 administrations. The U.S. abatement case from 1991, we're at six or seven administrations. So administrations come and go, and LRB board members come and go. But the cases that we're relying on are 59 years old, 60 years old, 35 years old. So it's not fluctuating in a maddening way, but it's really, we do have good examples, and that's how it should be interpreted, because that's what Congress said should happen. All right, thank you, counsel. Thank you. Rebuttal, one minute. Thank you. The U.S. abatement and LRB decision is highly suspect. It analyzes this complete issue without ever mentioning Indio Paint or the existing definition. It seems untethered to stare decisis, even as to the NLRB's own decisions. On standard of review, I urge the court to look at Penn Central, the Western Teamsters, stipulated facts. The review was still for clear error. Fletchville, Milwaukee, Seventh Circuit, adequately and accurately defines the extent of deference that should be given, given the statutory presumptions and the predominance of arbitration in these cases. No federal court in an MEPA case has ever extended this definition to the broad extent that Walker is asking here. Doing so hurts pension plans. Bottom line, we urge the court not to go there. Counsel, may I ask you, do you agree with opposing counsel that this is a strict issue of law? It's not a mixed issue of law, in fact? No. Determining whether a withdrawal occurred is a mixed issue of law. In fact, what the employer is doing is an issue of fact. Whether those tasks are enveloped within the words of the definition requires reconciliation of those facts against those words. You can't do one without the other. It's definitely mixed. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. Thank you. All right. This court will be in recess for 10 minutes. We'll be back at 11.08. All right. This court stands in recess.
judges: RAWLINSON, MILLER, DESAI